## Illinois Central Railroad Company

*v.*

## Elizabeth Hutchinson, Adm'x, etc.

1. NEGLIGENCE—*in railroad companies—and herein of relative negligence.* Where a person, while intoxicated, placed himself about dark, or in the dusk of evening, on a railroad track, running along a public street in a city, where the company's trains were constantly passing and repassing, and so remained there until he was run over and killed by a passing engine of the company, the deceased will be held to have-been guilty of such gross negligence, that no recovery could be had against the company for the injury, unless it appear that the agents of the company willfully caused the death of the party, or were guilty of such gross negligence on their part, as amounted in law to a willful neglect of duty.

Appeal from the Circuit Court of Alexander county; the Hon. John Olney, Judge, presiding.

The opinion states the case.

Messrs. Green & Gilbert, for the appellants.

Messrs. Allen & Webb, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action brought by Elizabeth Hutchinson, administratrix of Alexander Hutchinson, deceased, in the Alexander Circuit Court, against the Illinois Central Railroad Company, to recover compensation for causing the death of her husband, under the act of February 12th, 1853, by neglect, wrongful act or default of the company. The declaration avers that while the company were running their engine on the track along one of the public streets in the city of Cairo, when it was dark, deceased was run over, in crossing the track with due caution and care, in consequence of the neglect of the company to have a head light, to ring a bell or to sound a whistle.

On the trial, the evidence tended to show that deceased had been drinking, but to what extent does not very distinctly appear. Two witnesses testified to his position at the time, or just before, the accident occurred. One says he was sitting on the rail of the track, and the other, on the end of a tie and leaning over the side of the track. There is a difference in the statements of witnesses as to the time of day and the ability of persons to see and hear the train, but he could see the bulk of a man 50 yards, and the engine 150. One says it was getting dark. Another says it was rather inclined to be dark. Another says they were just lighting the lamps on the street when the accident occurred. Witnesses differ as to

52—47th Ill.

whether the bell was ringing, but all agree that there was no head light on the engine, nor does it appear that the whistle was being sounded. We make this statement of the main facts of the case, from a large amount of evidence, to show upon what appellants based their fifth instruction, which was refused by the court below, and the refusal of which, is now, among other rulings of the court, assigned for error. It is this:

"If the jury believe, from the evidence, that the deceased, while intoxicated, placed himself, about dark, or in the dusk of the evening, on defendants' track, running along a public street, where defendants' trains were constantly passing and repassing, and so remained there until run over and killed by the passing engine of defendants, then deceased was guilty of such gross negligence that you should find the defendants not guilty; unless you further believe from the evidence that the agent or agents of defendants willfully caused the death of deceased, or were guilty of such gross neglect on their part as amounts in law to a willful neglect of duty."

There can be no question that railroad companies, who appropriate streets or other thoroughfares to their own use, and run their tracks along such public passways, must be held to a very high degree of care and diligence. Public safety requires it, and they must be held to strictly observe the duty. In such a street, the entire public have a right to its use. It was created, and it is maintained for that purpose. It is an easment that may be enjoyed alike by the active and vigorous, the old, the infirm, and the young and inexperienced. It is true, the company have subsequently acquired an easement which authorized them to construct the track of their road along this street. But they did not thereby acquire the use of the street to the exclusion of the citizens, who, from necessity, choice, or mere whim, might see proper to travel over or along it. The right was in common to the community and to the company, to use it in the several

modes their easements authorized and permitted.   Neither can exclude the other, nor so exercise the use of their easement as to materially obstruct the others in the enjoyment of their rights.

The company have no right to unnecessarily obstruct the street by having their trains standing on the track; nor has an individual the right to obstruct the track of a road, by unnecessarily placing or leaving his property thereon, or by sitting or standing on the same.   And it must be held to be great negligence for a person, whether intoxicated or sober, to either stand or sit on the track of a railroad until struck and injured by a passing train.   All intelligent beings must know that such conduct is not only hazardous, but negligent in a high degree.   They must know that death or grievous injury must be the inevitable result of remaining thus exposed until a train shall pass.   Nor does it excuse an individual to say that he was drunk.   While perhaps he may not be held to that high order of care that is exacted from a sober person, still he is not excused from diligence and care.

If an individual were to become intoxicated, and thus expose himself, and injury, not resulting in death, were to ensue, it would not be held that he was thereby excused from diligence, if due precaution was observed by the company in operating their engines or trains.   It is the settled law of this court, that in such cases negligence is relative.   The fact that an individual is negligent, even grossly negligent, does not authorize or even justify the employees of the company to kill, or even injure such person, willfully or wantonly.   The fact that the person injured has been guilty of negligence, does not release the company from the use of every reasonable precaution to prevent the injury to individuals.   Even where the individual is guilty of negligence, and the engine driver sees the danger and has it in his power to avoid injury, and he wantonly or willfully destroys the life of the individual, he is guilty of crime, and might, no doubt, be

punished accordingly. No class of men have the right to willfully destroy human life, and to do so is criminal. Yet, when the negligent conduct of a person injured or killed has rendered it impossible for the engine driver, with the use of the highest degree of care, to avoid the act, then he is excused.

Knowing, as the engine driver did, that he was operating his engine along a public thoroughfare, and that old and infirm persons, children and drunken persons, were liable at all times to be abroad on the street, and thus in danger from passing trains, it was his duty to have used every precaution to avoid inflicting injury. If he did this, then the company cannot be held liable. The degree of care which devolved upon him in this public street in the city, was greater than in the country, where he has no reason to expect persons will be on the track, and hence less vigilance is required. Knowing the danger incident to the running of his engine on this street, although there was negligence on the part of deceased, more diligence was required of him than at other portions of the road, and what might be justifiable at other places, might be such gross negligence on his part as to render his conduct willfully negligent. Negligence being relative, it follows that time, place, and the circumstances must all be considered in determining the question. What would under one state of facts be gross negligence on the part of the company, or an individual, might, under different circumstances, be excusable.

The instruction was in accordance with the views here expressed, and should have been given. It is, however, insisted that the last clause is abstract, and leaves the jury to determine what amounts in law to a willful neglect of duty. It may be that, although it announced the law correctly, this clause is liable to this criticism, but it would not likely have misled the jury. If appellee was apprehensive that it might mislead the jury, she could have asked an instruction informing them what would amount in law to a willful neglect of duty.

We perceive no objections to the instructions given, or any error in refusing appellants' other instructions. And as the case must be passed upon by another jury, we deem it improper to discuss the evidence. The court below, in refusing to give the fifth of appellants' instructions, committed an error, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*