## WILLIAMS v. SOUTHERN PAC. R. CO.[*]

### No. 9272; December 28, 1885.

#### 9 Pac. 152.

**Appeal.—A Statement on Motion for a New Trial, When Certified by the Judge** of the court in the manner provided by law, and filed with the clerk, becomes part of the record; and if the notice of motion for a new trial specifies that such motion will be based on a statement of the case, it will be presumed that such statement, prepared, settled and filed, was used on the hearing of the motion; and on appeal, if it is part of the record certified by the clerk, it will be considered, without further identification or proof, that it was used on the motion for a new trial.

**Negligence—Contributory Negligence—Proximate Cause of Injury.**—One who by his ordinary negligence or willful wrong, has proximately contributed to an injury caused by the mere negligence of

---

[*]For subsequent opinion in bank, see 72 Cal. 120, 13 Pac. 219.

another, cannot recover compensation therefor, if but for his concurring and co-operating fault the injury would not have happened, unless the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former is exposed, to avoid the injury by the use of a proper degree of care.[1]

**Railroad—Lying Down on Track While Intoxicated.**—A person is guilty of gross negligence who, in a state of intoxication, lies down upon a railroad track; and the company is not liable if he is injured by a passing train, unless, in the exercise of reasonable care after the person is discovered in his exposed position, it could have avoided the injury.[2]

**Railroad—Duty as to Trespasser Asleep on Track.**—It is the duty of a railroad company and its employees, when a person is discovered asleep or helpless upon its track, to use all reasonable care by stopping its train so as to prevent injury; and failing in this duty, it becomes liable for injury to such persons, though they may have been guilty of contributory negligence, the injury being in such cases due to the willful or wanton act of the company as the proximate cause, and not to the negligence of the injured party. No presumption arises from the absence of care to watch for trespassers upon a track; and, in order to recover, a trespasser who is injured, being himself negligent, must show, not merely that he might have been seen, but that he was in fact seen in time, and under such circumstances as to render it the duty of the company to check the progress of its train.

**Negligence—Contributory Negligence—Question for Court or Jury.**—The question of contributory negligence, when left in doubt by the evidence, should be submitted to the jury, under proper instructions; but when the evidence is clear as to the facts, the question is one of law for the court.

APPEAL from Superior Court, County of Monterey.

S. F. Geiland and H. V. Morehouse for appellant; D. M. Delmas for respondent.

SEARLS, C.—This is an action to recover damages for an injury received by the plaintiff from defendant's railroad cars.

---

[1] **Cited** with approval in Basler v. Sacramento Gas etc. Co., 158 Cal. 519, Ann. Cas. 1912A, 642, 111 Pac. 532, where it is held that the vigilance a defendant is charged with to prevent injury, notwithstanding the plaintiff's contributory negligence, is not satisfied by a defendant for whom it is urged only that "he was engrossed with his own affairs."

Cited in a note in 31 L. R. A., N. S., 1032, 1035, on the subject of last clear chance.

[2] **Cited** with approval in Foley v. McMahon, 114 Mo. App. 445, 90 S. W. 114, as authority for one's not being required to anticipate an accident that has never occurred before.

Plaintiff had judgment for fifteen thousand dollars, from which judgment, and from an order denying a motion for new trial, defendant appeals.

The material averments of the complaint are that defendant is a corporation, the owner and manager of a certain railroad extending southerly from the town of Castroville, in the county of Monterey, to the city of Salinas, in the same county, and of the rolling stock on such road; that on the twenty-third day of July, 1882, the defendant was running a train, composed of a locomotive engine and cars, on said road; and that, through the negligence, carelessness and fault of the defendant in running and operating such train, the same struck and ran over the plaintiff, the wheels thereof passing over and crushing the right foot of plaintiff, so that it had to be, and was on the same day, amputated above the ankle-joint. The answer denies all negligence, carelessness or fault by or on the part of defendant, and avers that whatever injuries or damages were received, suffered or sustained by said plaintiff were in consequence solely of the negligence and culpable carelessness of the plaintiff, without any fault on the part of defendant.

It is urged by counsel for respondent that the statement on motion for new trial cannot be considered by this court, because, as is contended, there is nothing in the record showing that the statement was used on the motion. The statement was settled by the superior judge, and duly certified as true and correct on the third day of September, 1883, and thereafter, on the seventeenth day of September, the motion for a new trial was by the court denied. The record on appeal is properly certified by the clerk of the county of Monterey and ex officio clerk of the superior court in and for said county. We are referred to Nash v. Harris, 57 Cal. 242, and Simpson v. Ogg, 18 Nev. 28, 1 Pac. 827, in support of respondent's contention.

In Nash v. Harris, which was a motion to set aside a judgment, certain affidavits and papers were on file, but which were not embodied in any statement or bill of exceptions, or in any way authenticated, and the court, after holding that they were in no way identified as having been used on the motion, proceeds as follows: ''We cannot indulge in presumptions of papers which were used in the court below on the

hearing of a motion. To be considered, they must be made part of the record of the case, by a bill of exceptions, or be authenticated by the judge who tried the case, in such a way as to leave no doubt, when found in the transcript, that they are the papers which were before him when he acted, and upon which he decided. Unauthenticated papers in a transcript in which there is no bill of exceptions constitute no part of a record which can be considered upon appeal.''

In Simpson v. Ogg the supreme court of Nevada held that a statement on motion for new trial, based upon a statement not agreed to by the parties or their attorneys, and not certified as correct by the judge, in accordance with the statute, could not be considered on appeal.

The object of a statement or bill of exceptions is to make that record which before was not record, but rested only in the recollection of the court or counsel, or the minutes of the clerk: De Johnson v. Sepulbeda, 5 Cal. 149. And when a statement on motion for new trial is certified by the judge of the court in the manner provided by law, and filed with the clerk, it becomes a part of the record. It is not the filing of a document, like that under consideration, which gives to it its character as a record, but the certificate of the judge as provided by section 659 of the Code of Civil Procedure, and the filing thereof, which impresses it with that character.

The notice of motion for a new trial in this case specified, among other things, that the motion would be based on ''a statement of the case.'' The statement was prepared, settled and authenticated by the judge, and filed in due time. Thus prepared, settled and filed, it will be presumed it was used on the hearing of the motion for new trial; and, coming here as a part of the record on appeal under section 661 of the Code of Civil Procedure, duly certified by the clerk, it is entitled to consideration, without further identification or proof that it was used on the motion for a new trial: Towdy v. Ellis, 22 Cal. 651. It occupies a different position from affidavits and papers having no official sanction, and which, although filed, require official designation to identify them as having been used.

Plaintiff, being intoxicated, laid down alongside defendant's railroad, and fell asleep, with his feet so near the rail that a passing passenger train struck and crushed his right foot,

rendering amputation necessary. The place of the accident was near a private crossing of the railroad, known as "Kelleher's Crossing," between Castroville and Salinas, and from one mile to one and a half miles from the latter place. The injury was caused by the engine of defendant's regular passenger train, bound south, and running from eighteen to twenty miles per hour, over a straight road and level track. Defendant's engineer, in charge of the train, saw plaintiff alongside the track, and stopped his train, but not until the engine had struck him, and passed nearly or quite its length beyond the point where he lay. The case depends largely upon the question of contributory negligence by plaintiff.

He who is injured by the mere negligence of another cannot recover compensation therefor, if, by his own ordinary negligence or willful wrong, he proximately contributed to produce the injury of which he complains, so that but for his concurring and co-operating fault the injury would not have happened to him; except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former is exposed, to use a proper degree of care to avoid injuring him. The rule, as thus stated, is that laid down by Shearman & Redfield on Negligence (section 25), and is amply supported by authority.

When plaintiff laid down upon the line of defendant's railroad, over which, as he knew, trains were running, and in such proximity to its track that he was liable to injury from such passing trains, that he was guilty of negligence cannot be doubted. He was a trespasser upon the roadway—was at a point thereon where he had no right to be. It is true, he had been expelled from defendant's cars for alleged nonpayment of fare some three hours previously, at or near the point where he was injured, and, for a reasonable time thereafter, may be deemed to have had a license to be upon the line of the road; but the evidence tends to show that he visited a house near at hand and returned to the place of his injury. Such expulsion from the cars could give him no permanent right to locate and remain upon the road.

A man may contribute to his injury without affecting his right to recover. In order to defeat his right to recover, he must have not only contributed to the injury, but must have contributed to it under circumstances showing negligence on

his part. He must have been in fault, must have failed to use ordinary care for his own protection, and the want of such care must not only have contributed, but have contributed proximately, to the injury. "Walking along the track of a railroad, where it does not run upon a highway, is culpable negligence. . . . . Lying down upon a railroad is obviously the grossest negligence, which nothing can well excuse": Shearman & Redfield on Negligence, sec. 487; Louisville R. Co. v. Burke, 6 Cold. (Tenn.) 45; O'Keefe v. Chicago R. Co., 32 Iowa, 467; Illinois Cent. R. Co. v. Hutchinson, 47 Ill. 408; Herring v. Wilmington R. Co., 10 Ired. (N. C.) 402, 51 Am. Dec. 395.

In Felder v. Louisville R. Co., 2 McMull. (S. C.) 403, and Richardson v. Wilmington R. Co., 8 Rich. (S. C.) 120, slaves were asleep upon the track, and were killed, without any effort to stop the train; but it did not appear that the engineer saw them. The companies were held not to be liable. The case of Herring v. Wilmington R. Co., 10 Ired. (N. C.) 402, 51 Am. Dec. 395, was in many respects parallel with this. The plaintiff's slave lay down to sleep in the daytime, on a railroad track, where the train could have been seen for more than a mile. The cars approached at their usual speed, at the usual hour; and the engineer, when within a short distance of the slave, attempted to stop the engine by letting off the steam and reversing the wheels. And it was held the company was not liable.

We think it follows that in the case at bar the negligence of plaintiff was not only the cause of his injury, but the proximate cause of such injury. By proximate cause we must be understood as meaning "that cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue": Shearman & Redfield on Negligence, sec. 10. He was not, therefore, entitled to recover, unless, notwithstanding such negligence, defendant was guilty of some wanton or willful act whereby the injury was caused to plaintiff: Maumus v. Champion, 40 Cal. 121.

In Weymire v. Wolfe, 52 Iowa, 533, 3 N. W. 541, the court said: "If a person lies down upon a railroad track in a state of helpless intoxication, the company will not be justified in running a train over him, if it can be avoided in the exercise

of reasonable care after the person is discovered in his exposed position.''

One wrong or injury cannot justify or excuse another. A railroad company engaged in the carrying of passengers owes important duties to the public. It must use great care in furnishing all proper appliances for the safe conduct of persons confided to its care. It must transport its living freight with all reasonable speed, and its paramount duty is to look to the safety and welfare of the traveling public who may choose to patronize it. It should not be delayed in its rapid transit by trespassers upon its track, whose presence may impede and endanger its patrons.

It does not follow that it may with impunity run over, injure and destroy persons wrongfully upon its road. The right to inflict wanton, willful or needless harm does not exist. As to persons walking upon its track, and apparently in possession of their faculties, it is not bound to slacken the speed of its trains, but may warn them by proper signals, and rely upon their instinct of self-preservation to take them from danger. As to a person, although wrongfully upon its road, known by a railroad company to be both blind and deaf, it would clearly be its duty to stop its train and remove the intruder. So of a person asleep or helpless or unjudging upon its track. Upon discovering him, as the presumption is that he cannot help himself, it becomes the duty of the company and its employees to use all reasonable care, by stopping its train, so as to prevent injury to one helpless to save himself from impending danger. At other than places upon its road where persons have a right to be, the company is not bound, except in behalf of its own passengers, to watch for trespassers upon its tracks; but if, at any time and at any place, it discovers persons upon its road, apparently unable to protect themselves from its passing trains, it becomes its bounden duty to use all reasonable care and diligence to prevent their being injured; and, failing in this duty, it will become liable for injury to such persons, although they may have been guilty of contributory negligence, the injury being in such cases attributed to the willful or wanton act of the company as the proximate cause, and not to the negligence of the injured party. For trespassers, a railroad company is not bound to be watchful, hence no presumption of negligence arises from the absence

of such care as to such persons. As to a trespasser upon the road, who is injured, being himself negligent, the evidence should show, not merely that he might have been seen, but that he was in fact seen, in time and under circumstances rendering it the duty of the company to check the progress of its train, before it can be held liable for an injury to such wrongdoers.

The testimony on behalf of plaintiff failed to show that when he was discovered on its road defendant failed in its duty. The only testimony to that point served to show that the alarm signal was given by the usual short, sharp blasts from the steam-whistle, and that the train was suddenly stopped—more suddenly than when passing at a station.

If we look to the evidence of defendant, plaintiff's case is not helped. The substance of the engineer's testimony is that on Sunday afternoon, July 23, 1882, as he was going south with his train, his attention was first attracted by an object ahead, and near the track, which afterward proved to be a bundle of blankets; that a little later he saw another object farther in advance, which seemed like a man, and which he discovered to be a man; that he jumped from his seat, jumped for his reverse lever, threw it off, put on the air-brakes, and, having reversed his engine, opened the throttle and gave it steam; that his fireman also applied the tender-brake. He says this was all that could be done to stop the train; that, instantly upon seeing the man, he did all in his power to stop, but was unable to do so before the engine reached him.

Where the question of contributory negligence is left in doubt by the evidence, it should be submitted to the jury, under proper instructions; but where the evidence is clear as to the facts, the question of contributory negligence is one of law for the court: Fernandes v. Sacramento Ry. Co., 52 Cal. 45.

Under the rule as enunciated by this court in Needham v. San Francisco & S. J. R. Co., 37 Cal. 409; Kline v. Central Pac. R. Co., 37 Cal. 400, 99 Am. Dec. 282; Maumus v. Champion, 40 Cal. 121; Tennenbrock v. South Pac. C. R. Co., 59 Cal. 271—and which we do not understand to be in conflict with the principles declared in Meeks v. Southern Pac. R. Co., 56 Cal. 513, 38 Am. Rep. 67—we are of opinion that upon the facts as presented by the plaintiff a nonsuit should have been granted, and that upon the verdict of the jury a new trial

should have been awarded to defendant, and consequently that the judgment and order denying a new trial should be reversed and a new trial ordered.

We concur: Belcher, C. C.; Foote, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded for a new trial.