**CHICAGO, R. I. & P. R. CO. v. PICKETT.**

No. 22938.   Oct. 2, 1934.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

A. M. Reinwand and John F. Thomas, for defendant in error.

PER CURIAM. The plaintiff's petition in this cause alleges that the defendant railroad company, in constructing its line of road from Lawton to Geronimo, built the same over and across Wolf creek; that the railroad track was raised on both sides of Wolf creek and a bridge built across said creek by the defendant; and that in throwing up the heavy embankment of dirt upon which to lay said railroad track, the defendant cut partially through the high Wolf creek embankment on the south side of said creek, thereby creating an artificial channel, and thereby diverting the water from Wolf creek in times of high water into this artificial channel created by the defendant and conveying the water in a southerly direction for about 100 rods, where it left the right of way of defendant and turned in a southeasterly direction until it reached plaintiff's land, instead of running in an easterly direction from the place where the railroad bridge crossed Wolf creek, and thence following the Wolf creek channel into Cache creek; that in the winter of 1906-1907, the defendant filled in a portion of the artificial channel, but that during the two years prior to the filing of the suit the artificial channel was washed out until the water comes down Wolf creek, leaves the channel of said creek, and enters the artificial channel which it follows until it is discharged in such a manner as to overflow the plaintiff's land, and also that when Cache creek is up its waters back up the Wolf creek channel and enter this artificial channel and follow the same, thereby leaving its natural water course so that it is discharged on the lands of the plaintiff. Petitioner alleges that his crops in 1928 and 1929 were injured and partially destroyed, and that large portions of the soil were washed away and big washouts and holes in the cultivated fields were created by the overflowing water. The petition alleges:

"All of which damage was sustained because of the carelessness and negligence of the defendant herein by reason of digging this artificial channel * * * and were caused by the wrongful and unlawful acts of the defendant herein in creating the artificial channel as above described, thereby changing the water course from its natural channel and discharging the same in a manner that it overflows the plaintiff's farm."

Judgment was demanded for $2,500.

The defendant answered by general denial and a plea of the statutes of limitations. The reply of the plaintiff is a general denial.

Verdict for defendant.

The evidence shows the railroad was built in 1902 and 1903; that in constructing said railroad the dirt was obtained for the embankment by excavating a "borrow pit" about 30 feet wide and 8 feet deep and about 100 yards long, extending up to within 10 or 15 feet of the bank of Wolf creek; that this bank of Wolf creek between the creek and the end of the borrow pit eventually washed out by the water seeping through from the creek and finally getting into the borrow pit, and that this borrow pit continued to wash deeper from the waters during the floods of Wolf creek and Cache creek, into which Wolf creek empties below the point of this bridge and borrow pit. There is further evidence that the railroad in 1906 and 1907 put a dam across the north end of the borrow pit between Wolf creek and the borrow pit, which finally washed out. There is evidence, also, that the natural channel of Wolf creek is in an easterly direction after passing under the railroad bridge and then makes a bend north; that during the years 1928 and 1929 the water of Wolf creek went through the borrow pit and the bed of Wolf creek seemed to be filling up; and that in June, 1929, the water was banking up in Cache creek into the channel of Wolf creek, where it found an exit through the borrow pit and down through the bottom to plaintiff's land; that the borrow pit was washed out about 60 feet wide and the water was about 12 feet deep, and that at the time Wolf creek had no water coming down it. There was further evidence tending to show that this water coming through the borrow pit eventually reached plaintiff's premises and did the damage complained of.

It is unnecessary in the view we take of the case to set out defendant's evidence, which otherwise accounted for the flood on plaintiff's land, as the verdict was for the defendant.

The plaintiff in error has but three assignments of error:

(a) That the order of the court in granting plaintiff a new trial is contrary to the law;

(b) That such an order constitutes an abuse of discretion of the trial court; and

(c) Setting out that the judge of the trial

court after verdict and pending motion for new trial inspected the lands and premises and made a subsequent and independent search and investigation concerning the facts of the case, and from such investigation the court was led to disregard the evidence at the trial and grant plaintiff below a new trial by reason of such investigations.

1. In ruling upon the motion for new trial, as appears from the record of the proceedings at the time, the court said:

"I have been down and looked over the premises and from an investigation of the premises, I am of the opinion that on some occasions Cache creek overflows so as to destroy crops that are on at least parts of the premises of the plaintiff; and I am also of the opinion that at times when Cache creek does not overflow that, by reason of the borrow pit made by the defendant, water is permitted to run over the premises of the plaintiff and do some damage to his land, and without deciding the question of whether in this particular instance his crops were destroyed partially by the water that went through the borrow pit when Cache creek was not out of banks, I think the plaintiff is entitled to recover something at least for the damage to his land, and that he ought to have a new trial. For that reason I feel that the verdict was contrary to the evidence in the case and that the plaintiff is entitled to a new trial, and it is so ordered."

It thus appears that the court specifically based his ruling upon the motion for a new trial upon his extrajudicial investigations.

It is unnecessary to cite authorities for decisions of this court to the effect that the trial court has a discretion to exercise in the determination of motions for a new trial founded, as this motion was, upon the proposition that the verdict was contrary to the evidence and law in the case. Nor is it necessary to cite cases to the effect that such discretion is a "judicial discretion", and counsel for both parties in this case have made these propositions the sole subject of their briefs.

There are many definitions of judicial discretion. As said in Deeds v. Deeds, 108 Kan. 770, 196 P. 1109-1110: "Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence"; and as stated in Smith v. Hill, 5 Fed. (2d) 188: "Judicial discretion is not the indulgence of a judicial whim, but is the exercise of judicial judgment based on facts and guided by law"; and in Conway v. Minnesota Mutual Life Insur-

ance Co., 62 Wash. 49, 112 P. 1106; "The term 'judicial discretion' may be defined generally as a discretion which is sound and guided by fixed principles of law". Manifestly, the determination of whether the verdict was contrary to the evidence depended solely upon the evidence; and for the court to investigate and advise itself as to the facts of the case by reference to any other source than matters of common knowledge, which it might take into consideration in weighing the evidence, was not in conformity with the analogies and fixed principles of law. On this record we can quite understand the desire of the trial judge to be informed as to the facts in the case by independent investigation. But such investigation by the court as to the facts is not consonant with the right of trial by jury upon evidence introduced in open court and in the presence of the parties.

There is, perhaps, little if any authority directly decisive of the question here involved. At least we have been cited to none, but it is clear that the analogies of the law, as well as the specific basis of the motion that the "verdict was contrary to the evidence," require that the determination of that "contrariety", if it exists, should be determined from consideration of the evidence alone. By the second subdivision of section 528, O. S. 1931, this court is given jurisdiction to reverse, vacate, or modify an order that grants or refuses a new trial, and the discretionary power vested in the trial court in the granting of a new trial on the ground of the verdict being contrary to the evidence is therefore manifestly subject to reversal by this court, although this court has repeatedly said that it will not reverse such order granting a new trial, except for abuse of discretion.

To apply anything other than the analogies and principles of our jurisprudence to the determination of a motion for new trial is an abuse of discretion and an invasion of the province of the jury to determine the facts from the evidence introduced in court.

Whether in this case, which requires a reversal for this error, it would be proper to direct the court below to overrule the motion for new trial or to direct such court to reconsider the motion for new trial and determine it solely upon the evidence introduced at the trial, we need not pause to inquire, for it appears that in any event the motion for a new trial should not have been sustained, and to determine that question we have examined the entire record.

2. An examination of the petition in this case shows that the gist of the wrong complained of is the "carelessness and negligence of the defendant by reason of digging the artificial channel and in the wrongful and unlawful acts of the defendant in creating the artificial channel as above described."

The facts constituting the carelessness or unlawfulness are not pleaded. It is not even pleaded that the borrow pit was dug so close to the channel of Wolf creek that a man of ordinary prudence would have known that it would divert the waters of such creek, and what the petition leaves indefinite and uncertain upon this point the evidence in no manner aids. The court cannot apply the doctrine of res ipsa loquitur, for the court cannot know that a stream in a designated channel will wash out, or would be likely to wash out, its banks at any particular place, to the extent of 10 or 15 feet. It is sufficient to say on this point that much would depend upon the course and deflection of the stream and the quantity of water that it carried, as well as the nature of the banks and the rapidity of the current. On the one hand, the company had a right to excavate the borrow pit on its own premises, and, on the other hand, it had no right to divert the waters of a creek on its own premises to the injury of another owner, even though he be four and one-half or five miles away and not on that creek.

Here the only complaint made is carelessness, negligence, wrongfulness, and unlawfulness in the construction of the borrow pit, and no complaint is made of any negligence or carelessness in the maintenance of it after construction, and therein the case differs from the case of M., K. & T. Ry. Co. v. Johnson et al., 34 Okla. 582, 126 P. 567. In this latter case it was held that proper original construction was a defense as against liability for the original construction, but that if, subsequent to the original construction, something occurred which demonstrated faulty construction, a new standard of obligation was erected and the defendant could be held liable for the maintenance of a faultily constructed bridge which resulted in overflowing the lands of the plaintiff in that action and causing damage. The case cites for its authority Gulf, C. & S. F. R. Co. v. McGowan, 73 Tex. 355, 11 S. W. 336. There is no allegation of neglect in discovering the condition of the borrow pit or in remedying it after such discovery. But we think this case may be distinguished on a still broader ground, namely, that where a riparian owner has without proven negligence constructed an improvement and "borrow pit" upon his own premises and one which does not interfere with the natural course of a stream, he is not liable for damages to a lower owner caused by the stream some years later breaking its banks and entering such borrow pit and therefrom escaping onto the lands of another. In such case the existence of the improvements or borrow pit, as in this case, must be said to be rather a condition than the proximate cause of the injury, and the right of a riparian owner to improve his lands, where such improvement does not effect a diversion of the waters of the stream, but only furnishes a condition that incidentally affects the course of such waters many years after the construction of such improvement, cannot be held to subject the riparian owner constructing such improvement to liability for damages for diversion of the waters of the stream.

The case is not one of original diversion of a water course, nor of affecting the flow of a stream by embankments or levies, nor one where the improvement is intended to affect the flow of a stream either in flood time or otherwise, but one in which excavations are made by a property owner for the improvement of his premises, and where the improvement, adapted solely for the utility of the owner's premises, has been made the condition through which water escapes, and in our judgment the construction of the "borrow pit" is too remote to be regarded as the proximate cause of the injury to plaintiff, there being no proof of negligence or carelessness in its construction or of its inadaptability to the purposes for which it was made. Further, we may say, the original excavation not being shown to be wrongful, the damages are damnum absque injuria. Lamb v. Reclamation Dist. No. 108, 73 Cal. 125, 14 P. 625. That the practical construction of proximate cause is one from which a man of ordinary experience and sagacity could foresee the result might probably ensue, see such cases as City Council of Montgomery v. Wright, 72 Ala. 411, 422 (citing Shear. & R. Neg. sec. 10 and 3 Pars. Cont. [6th Ed.] sec. 179; Williams v. Southern Pac. Ry. Co. (Cal.) 9 P. 152, 155; Texas & P. Ry. Co. v. Woods, 8 Tex. Civ. App. 462, 28 S. W. 416, 418,; American Exp. Co. v. Risley, 179 Ill. 295, 53 N. E. 558, 559. See, also, Missouri, K. & T. R. Co. v. Byrne (C. C. A.) 109 Fed. 359, 362; Consolidated Electric Light & Power Co. v. Koepp, 64 Kan. 735, 68 Pac.

608, 609; State v. Manchester & L. R. R., 52 N. H. 528, 529.

For the reasons assigned, the order of the district court of Comanche county, granting plaintiff a new trial, is reversed, with instructions to overrule said motion, and it is so ordered.

The Supreme Court acknowledges the aid of Attorneys A. J. Biddison, Russell G. Lowe, and Hunter L. Johnson, in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Biddison and approved by Mr. Lowe and Mr. Johnson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, J. (specially concurring). I concur in the conclusion reached by the majority opinion, but I do not interpret the statement of the trial judge at the time of sustaining the motion for new trial as being the sole ground for sustaining said motion. Other questions in the cause are conclusive of the rights of the parties, and for said reasons the action of the trial court was erroneous.

BAYLESS, J., concurs herein.