CHANDLER v. KURN et al., Trustees.

No. 32555. April 15, 1947.

Rehearing Denied May 13, 1947.

*180 P. 2d 651.*

P. D. Erwin, of Chandler, for plaintiff in error.

E. G. Nahler, of St. Louis, Mo., and Cruce, Satterfield & Franklin, of Oklahoma City, for defendants in error.

CORN, J. This is an appeal from a judgment of the district court of Lincoln county, sustaining defendants' demurrer to plaintiff's evidence, in an action brought to recover damages for injuries to growing crops, alleged to have resulted from defendants' negligence in constructing and maintaining a ditch, or borrow pit, upon its right of way.

Defendants' railroad, constructed in 1898, crossed the quarter section of land, of which the 55 acres leased to plaintiff is a part, in a northwesterly and southeasterly direction. Two railroad trestles opened onto plaintiff's land, all of which lies south of the railroad embankment. When the railroad was constructed a borrow pit was dug on the north side of the embankment from a point about opposite plaintiff's land and extending about one-fourth mile west.

About 1912 or 1913, a public drainage district was organized and a drainage canal was built approximately 100 feet north of the right of way. For many years U.S. Highway 66 was routed along between the canal and the north side of the railroad right of way, but this route finally was abandoned.

After opening of the drainage canal the south bank began to erode away. In 1941 and 1942 the erosion had progressed to the point that flood waters from the canal were able to escape into the borrow pit and then flow in a southeasterly direction to the open trestles, there passing under the railroad embankment and

spreading over plaintiff's land, causing the damages for which plaintiff now seeks recovery.

Plaintiff alleged negligence in the construction of the borrow pit on the north side of the railroad embankment; that encroachment of the erosion to the south and the expected overflow into the borrow pit, if left open, was apparent to defendants; and that defendants were careless and negligent in digging and then allowing the borrow pit to remain open. Further, that after the erosion had reached an advanced state, defendants maintained the south bank of the canal by rip-rapping until about January, 1941, when these efforts were abandoned and no further effort was made to stop the erosion.

Defendants contended that the manner of construction was proper and necessary, and that any overflow resulting from erosion of the canal bank, which permitted the overflow, resulted from negligence in the maintenance of the drainage canal.

Defendants' demurrer to plaintiff's evidence was sustained and judgment rendered for defendants, upon the ground that plaintiff's evidence failed to show actionable negligence on the part of the defendants.

Plaintiff's principal contention is that, although the drainage canal was constructed after the railroad, defendants nevertheless were bound to maintain the embankment and drains so as to prevent diversion of water from the canal. The argument is based upon the theory that no necessity existed for defendants to construct the borrow pit, and that it was negligently dug and maintained, and that defendants had notice of the changing conditions created by the drainage canal, and so were bound to recognize and care for such changing conditions.

Supporting this argument plaintiff relies upon numerous decisions from other jurisdictions, holding to the effect that even though the original construc-

tion was proper, notice of a changed or altered condition requires the railroad to protect against damage, by reconstruction to provide adequate drainage.

The authorities relied upon as being directly in point are not applicable here. They deal with matters related to the railroad's duty to provide drainage facilities where the construction of the railroad has impaired existing facilities. Such is not the case here.

The original borrow pit which defendants dug along the railroad embankment was not constructed as a drainage ditch. Neither did the construction of the borrow pit create, of itself, a flood water stream upon plaintiff's land. There was no evidence that construction of the borrow pit was improper. Thus, the controlling question is whether, after having properly constructed its facilities, the railroad would be liable for damages resulting from flood waters flowing into this ditch and thence over plaintiff's land, the flood water having escaped into the ditch because of erosion of the drainage canal which was constructed for the purpose of carrying off such flood waters.

We have considered essentially this same question heretofore in Chicago, R.I. & P. Ry. Co. v. Pickett, 169 Okla. 123, 36 P. 2d 284, and in Chicago, R.I. & P. Ry. Co. v. Watson, 178 Okla. 89, 61 P. 2d 698. In both of these cases the facts were very similar to the case now before us.

In the Pickett Case, supra, the railroad, in excavating for an embankment as an approach to a stream, dug a borrow pit along the embankment. The construction was not faulty and no reason existed for foreseeing that a nearby stream would erode and permit flood waters to enter the borrow pit and thus reach and damage plaintiff's land. However, the stream did erode into the borrow pit and thus escaped its natural channel and flowed onto plaintiff's land some distance away.

In denying plaintiff's right to recover

under such circumstances, we held, in paragraph 3 of the syllabus, as follows:

"In a case where a railroad, in 1902-03, in constructing its embankment for approach to its bridge over a stream, excavates a 'borrow pit' not shown to have been in any manner faulty or so close to the stream as to cause reasonable apprehension that the stream might or would wash away the intervening ground and 'at times of flood enter the 'borrow pit' and through it and various depressions reach and enter upon the premises of plaintiff and there do damage, but some years subsequent to the construction of such pit the stream does wash into the 'borrow pit,' so that in 1928 and 1929 the stream or a large portion thereof pours through such pit and down through various depressions onto the lands of plaintiff several miles distant and there causes damage, such 'borrow pit' cannot be said to be the proximate cause of such damage, and the same is damnum absque injuria."

The rule so announced was followed in the Watson Case, supra. Our attention has been directed to Chicago, R. I. & P. Ry. Co. v. Kahl, 168 Okla. 578, 35 P. 2d 731. However, in the Watson Case, which adopted the rule announced by the Pickett Case, it was pointed out the decision in the Kahl Case did not affect the rule laid down in Chicago, R.I. & P. Ry. Co. v. Pickett, supra.

Plaintiff attempts to distinguish between the cases above cited and the present case on the ground that neither of the cited cases involved artificial drainage by a public drainage canal. This seems a distinction without a difference. The fact that in one instance the erosion was from a natural stream, while in the present case it was from an artificial drainage canal, would not be sufficient to uphold the' rule in one instance while denying it in the other.

Plaintiff also contends that, even admitting the drainage canal was improperly constructed, defendants are liable as joint tort-feasors because the wrongful acts contributed to the injury. Having determined defendants' acts in constructing the embankment and borrow pit were not wrongful, this argument is without substantial merit.

It is further contended that the evidence of negligence and improper construction on part of defendants was sufficient to take the case to the jury. No evidence of negligence in construction was introduced, but plaintiff asserts that the fact the borrow ditch was dug when the railroad embankment was built and then allowed to remain open, together with the building of the railroad trestles which permitted the flood water to flow onto plaintiff's land, were sufficient to show negligence.

We believe the statement in Chicago, R.I. & P. Ry. Co. v. Pickett, supra, to the effect that existence of the improvements must be said to be a condition, rather than the proximate cause of the injury, is applicable here.

Under the rule that where there is no competent evidence sufficient to establish a right to recovery a demurrer to the evidence should be sustained, we are of the opinion the judgment of the trial court was correct. See Smith v. Dunbar Co., 125 Okla. 214, 257 P. 282.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, WELCH, and GIBSON, JJ., concur.