2015 OK CIV APP 87

**Roberto SANCHEZ–MUNOZ and Alejandro Sanchez–Munoz, Plaintiffs/Appellants,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA HORSE RACING COMMISSION, Defendant/Appellee.**

No. 112,330.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 13, 2015.

John Mac Hayes, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Neal Leader, Senior Asst. Attorney General, Mary Ann Roberts, Asst. Attorney General, Attorney General's Office, Oklahoma City, Oklahoma, for Defendant/Appellee.

BRIAN JACK GOREE, Presiding Judge.

¶ 1 Plaintiffs/Appellants, Roberto Sanchez–Munoz and Alejandro Sanchez–Munoz (collectively the Sanchez Brothers), seek review of the district court's order affirming a decision of the Oklahoma Horse Racing Commission that suspended the Sanchez Brothers' trainer licenses and imposed fines. At issue is whether the agency properly admitted and relied on a novel scientific technique for detecting doping and whether it violated the Sanchez Brothers' due process rights. We hold the Commission properly admitted and relied on the expert testimony regarding a novel testing technique and its order was neither made upon unlawful procedure, affected by error of law, clearly erroneous, nor arbitrary and capricious.

¶ 2 Roberto was licensed by the Commission as an Owner/Trainer and Alejandro was licensed as an Assistant Trainer. The Commission's Board of Stewards notified the Sanchez Brothers of a disciplinary hearing before the Stewards based on ten of their horses testing positive for dermorphin, a pro-

hibited substance. The notice stated that punishment for the violation might be "denial, refusal or suspension of the occupation license of the accused for not more than one year per violation; · or a fine not to exceed $2,500.00 per violation; or exclusion from all enclosures in the state; or suspension and fine and/or exclusion; or ineligibility for licensure; and/or referral to the Commission for suspension or revocation of the occupation license of the accused or imposition of fines not to exceed $10,000.00."

¶ 3 The Sanchez Brothers elected to have split sample testing performed. All of the split samples tested positive for dermorphin. After the Stewards held an evidentiary hearing on the doping allegations, they entered an order finding the Sanchez Brothers in violation of OAC 325:35–1–5 *Trainer Responsibility* and OAC 325:45–1–4 *Drugs or Medication*, because ten horses under their care and custody tested positive for the drug dermorphin following wins in races at Remington Park. The Stewards concluded that the level of discipline that they were authorized to impose was not a sufficient penalty. They referred the matter to the Commission with the recommendation that the Commission assess a suspension greater than one year and a fine greater than $2,500.00. The Stewards ordered the horses disqualified and any trophies or awards returned.

¶ 4 The Sanchez Brothers appealed the Stewards' order to the Commission, asserting that the testing method for dermorphin had not been validated by the Racing Medication and Testing Consortium and was unreliable. The Commission set the matter for hearing, and sent a notice of the hearing to the Sanchez Brothers. The notice stated that the Stewards had referred the matter with the recommendation that the Commission impose a suspension greater than one year and a fine of more than $2,500.00 in each case.

¶ 5 After hearing oral argument, the Commission entered its order affirming the Stewards' order. In considering punishment, the Commission reasoned that the use of dermorphin was a serious offense because its use in a race horse could cause the horse to overrun an injury or pain, leading to injury or death to the horse or jockey, as well as defrauding of the betting public. The Commission concluded that the use of the drug was deserving of severe sanctions. Accordingly, as to Roberto, it imposed a fine of $10,000.00 and suspended his license for ten years in each of the ten cases. It ordered that the first two suspensions be served consecutively and the remaining eight be served concurrently with the first two suspensions, for a total punishment of a twenty-year suspension and a $100,000.00 fine. As to Alejandro, the Commission imposed a fine of $5,000.00 and a suspension of ten years in each of two cases, for a total fine of $10,000.00 and total suspension of twenty years.

¶ 6 The Sanchez Brothers petitioned for judicial review by the district court of Oklahoma County pursuant to 75 O.S. 2011 § 318(B)(2). They sought to have the Commission's orders set aside on the grounds that the Stewards erred in (1) accepting the testing methodology of Industrial Laboratories Co., Inc. (Industrial Labs) because it had not been sufficiently validated, (2) accepting the split sample testing from Louisiana State University Laboratory as confirming the positive results when the methods were disparate, (3) failing to afford due process to Alejandro as assistant trainer in that he was not allowed notice of the medication violations, (4) imposing double jeopardy on Alejandro, and (5) imposing excessive punishment on both Sanchez Brothers.

¶ 7 After the district court heard oral argument, it issued its order affirming the decisions of the Commission. It held that the orders were not arbitrary and capricious and were supported by the evidence. It found that the Commission did not abuse its discretion in relying on the test results from Industrial Labs, and the split sample test results from Equine Medication Surveillance Laboratories of Louisiana State University, because there was ample evidence of the accuracy and reliability of the testing methodologies used by both labs. The district court also held that Alejandro's due process rights were not violated and he was not subjected to double jeopardy.

¶ 8 The Sanchez Brothers appeal from this order. In a proceeding for the review of an

agency order, we may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if we determine that the petitioner's rights have been prejudiced because the agency's order is: (a) unconstitutional; (b) in excess of the agency's authority; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence; (f) arbitrary or capricious; or (g) because the agency failed to make findings of fact upon request. 75 O.S. 2011 § 322.

## I

¶ 9 The Sanchez Brothers' first contention is the agency erred in relying on testing methodology that failed to meet the minimum standard for reliability set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert*, the Court set forth factors for the trial court to consider in determining whether scientific testimony was sufficiently reliable, including (1) whether a theory or technique can be and has been tested, (2) whether it has been peer reviewed, (3) the known or potential rate of error, (4) the existence and maintenance of standards controlling the technique's operation, and (5) general acceptance in the relevant scientific community. 509 U.S. at 593–594, 113 S.Ct. 2786. The inquiry as to reliability is a flexible one. 509 U.S. at 594, 113 S.Ct. 2786. No single factor is definitive, and other factors may bear on the inquiry. 509 U.S. at 593, 113 S.Ct. 2786.

¶ 10 Oklahoma adopted *Daubert* in *Christian v. Gray*, 2003 OK 10, 14, 65 P.3d 591, 600. In reviewing an admissibility determination under *Daubert*, we will not disturb the lower tribunal's ruling absent a clear abuse of discretion. *Id.* at ¶ 42. An abuse of discretion occurs when the tribunal bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for the ruling. *Id.* at ¶ 43.

¶ 11 Petra Hartmann, the director of drug testing services at Industrial Labs, testified that her lab developed the test for dermorphin in racehorses. She said that they completed validation studies in-house, and then shared the methodology with sixteen other labs. She testified they sent spiked samples to other labs to test the method, and presented the method at the International Conference of Racing Analysts and Veterinarians. Hartmann said they received no reports of problems with the method. She testified that after samples from Oklahoma races came back positive, she performed confirmatory testing on the samples and then notified the Commission of the violations.

¶ 12 Dr. Steven Barker, a Louisiana State University professor of veterinary medicine who serves as the state chemist in the Louisiana State Racing Commission, testified that his lab received the split samples from Oklahoma to test. He said all ten samples tested positive for dermorphin, and he quantified the amount in each. He said he used a solid phase extraction procedure to isolate dermorphin from the serum and then analyzed the samples using liquid chromatography tandem mass spectrometry. Dr. Barker testified that this analytical process was the gold standard in forensic work, and solid phase extraction was a well-established method that was routinely used in the equine drug testing industry as well as in the larger scientific community. He testified that the part of the procedure that Industrial Labs had recently improved was the extraction of dermorphin from the urine and plasma sample. He said that his lab as well as two other labs had validated the extraction method provided by Industrial Labs, with all of the positive control samples testing as positive and the negative controls testing negative.

¶ 13 Dr. Barker discussed one instance involving two other labs where a split sample tested positive in one lab and negative in another lab. He explained that the lab reaching the positive test used a method that detected an isomer of dermorphin known to be unstable, and the split sample had degraded by the time it reached the second lab such that it tested negative.

¶ 14 This evidence establishes that Industrial Lab's technique for testing for dermorphin has been tested and peer reviewed, and no lab testing the technique on known sam-

ples has reported a false positive. Based on this record, we hold that the Board of Stewards did not abuse its discretion in admitting and relying on the results of the dermorphin tests performed by Industrial Labs and the Louisiana State University lab.

## II

¶ 15 The Sanchez Brothers' next contention is the Commission erred in imposing a sanction more severe than the maximum sanction indicated in the hearing notice served on them. Due process requires notice that apprises a party of the rights which may be affected by judicial process. *Bailey v. Campbell,* 1991 OK 67, ¶ 16, 862 P.2d 461, 469. The notice of hearing before the Stewards apprised the Sanchez Brothers of the sanctions that the Stewards were authorized to impose. Likewise, the notice of hearing before the Commission apprised the Sanchez Brothers of the sanctions the Commission was authorized to impose. The sanctions imposed were within those authorized by law. 3A O.S. 2011 § 204(A)(17). We conclude that the Commission afforded the Sanchez Brothers adequate notice under due process standards.

## III

¶ 16 The Sanchez Brothers' next contention is that Alejandro's due process rights were violated because he was not afforded "Notice of Medication Violation" in his capacity as assistant trainer. He acknowledges that the Commission pursued sanctions against him only in the two cases in which he was both the assistant trainer and owner of the horse. In those cases, he received the Notice of Medication Violation in his capacity as owner.

¶ 17 The purpose of the Notice of Medication Violation is to provide the trainer and owner the opportunity to have a split sample sent to another lab for further testing. OAC 325:45–1–20. In this case, Alejandro did receive the Notice of Medication Violation and a split sample was sent to another lab. Alejandro was afforded the protection of the rule providing for split samples and received the process due to him.

¶ 18 Alejandro next argues that he was subjected to constitutionally impermissible double jeopardy because he was sanctioned both as an owner and as an assistant trainer. The Double Jeopardy Clause of the Fifth Amendment protects only against the imposition of multiple criminal punishments for the same offense. *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). Administrative sanctions that combine civil monetary penalties with occupational debarment are not criminal punishments and do not violate double jeopardy. 522 U.S. at 103, 118 S.Ct. 488.

## IV

¶ 19 The Sanchez Brothers' last contention is that the fines and suspensions imposed were arbitrary and capricious because they were excessive and more severe than necessary for the regulation of horse racing. Arbitrary and capricious refers to action that is willful and unreasonable without consideration or in disregard of facts. As noted above, the punishment imposed was within the Commission's authority under 3A O.S. 2011 § 204(A)(17). Dr. Barker testified that dermorphin could cause a horse to overrun an injury or its pain, which could cause the horse to break down, leading to injury or death of the horse and jockey. Given that those who administer the drug are risking the jockey's life in order to make money, we do not find that a ten-year suspension per use is unreasonable or in disregard of facts.

¶ 20 For the foregoing reasons, the district court's order affirming the order of the Commission is AFFIRMED.

BUETTNER, J., and BELL, J., concur.